UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES ex rel. <br> Rhonda Harris, Relator <br><br> STATE OF LOUISIANA ex rel., Rhonda Harris, Relator <br><br>    Plaintiff-Relators <br><br> v. <br><br> SEASIDE HCBS, LLC; COGNITIVE HCBS, LLC; COGNITIVE DEVELOPMENT CENTER BEHAVIORAL HEALTH SERVICES, LLC; COGNITIVE DEVELOPMENT CENTER OF BATON ROUGE, LLC and COGNITIVE DEVELOPMENT CENTER, LLC <br><br>    Defendants | CIVIL ACTION <br><br> NO.: 18-CV-994 <br><br> SECTION BAJ-RLB |

**STATE OF LOUISIANA'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

NOW INTO COURT, through undersigned counsel, comes the State of Louisiana through its duly elected Attorney General, Jeff Landry, who respectfully submits its response to the Defendants' *Motion to Dismiss the State's Complaint in Intervention*:

1

## Table of Contents

**TABLE OF AUTHORITIES** .................................................................................................... 3

**Introduction** .................................................................................................................................. 4

**Procedural History** ..................................................................................................................... 4

**Law and Argument** .................................................................................................................... 5

    *The State plausibly asserts a claim under MAPIL* ................................................................. 6

    *The State plausibly pleads a violation of MAPIL section 438.3(A) and (B)* ......................... 7

    *The State plausibly pleads a claim under MAPIL 438.3(C)* ................................................ 11

    *The State plausibly pleads a claim under MAPIL 438.3(D)* ............................................... 11

    *The State's Complaint satisfies the requirements of Rule 9(b)* .......................................... 12

**Conclusion** .................................................................................................................................. 18

# TABLE OF AUTHORITIES

**Cases:**

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009)

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)

*U.S. v. Bollinger Shipyards, Inc.*, 775 F.3d 255 (5th Cir. 2014)

*U.S. ex rel Willard v. Humana Health Plan of Texas Inc.,* 336 F.3d 375 (5th Cir. 2003)

*U.S. ex rel Grubbs v. Kanneganti*, 565 F.3d 180 (5th Cir. 2009)

*Lamar v. Micou,* 114 U.S. 218; 5 S. Ct. 857, 29 L.Ed. 94 (1885)

**Statutes:**

La. R.S. 46:437.3

La. R.S. 46:438.3

La. R.S. 46:460.71(A)

La. R.S. 46:438.8(A)

**Introduction**

In their *Motion to Dismiss*, the defendants in this matter fault the State's *Complaint* for failing to adequately assert a claim under the various provisions of Louisiana's Medical Assistance Program Integrity Law, La. R.S. 46:437.1, *et seq.*, (hereinafter referred to as "MAPIL"). Additionally, and despite the State's specifically providing over 6,000 examples of false or fraudulent claims, including documentation obtained from the defendants that supports the State's allegations, and providing an excerpt of the progress notes and provider remittance advices that show the defendants had knowledge that the claims it submitted were false, the defendants also attempt to assert that the State fails to plead its claims with required particularity as required by FRCP 9(b). For the reason discussed below, the State contends that the defendants' assertions in their *Motion to Dismiss* are without merit and the *Motion* should be denied.

**Procedural History**

Louisiana filed its Complaint in Intervention on January 10, 2022, after investigating the allegations brought to its attention by the Relator in the *qui tam* complaint she filed on November 2, 2018. The Relator's complaint named the United States, Louisiana, Georgia, and North Carolina as parties Plaintiff to the action. On August 12, 2021, the United States informed this court of its decision to not intervene at this time. Also on August 12, 2021, the State of Louisiana filed a Notice of Declination on behalf of Georgia and North Carolina notifying the court of Georgia's and North Carolina's decision to decline to intervene in this matter. The Relator subsequently dismissed Georgia and North Carolina from the litigation

4

without prejudice. The United States remains a real party in interest in this matter as the Relator has the right under the federal False Claims Act to prosecute the United States' claims.[1]

**Law and Argument**

For purposes of a motion to dismiss, the Court must take all of the factual allegations in the complaint as true. *Ashcroft v. Iqbal,* 556 U.S. 662 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Id.* A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* That is, under the general pleading standards of Fed. R. Civ. P. 8, the factual allegations in the complaint need not be detailed, although "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Ashcroft, 556 U.S. at 678.*

Additionally, to state a claim under the False Claims Act[2], the plaintiff must meet both the plausibility pleading standard of FRCP 8 and the heightened pleading standard of FRCP 9(b). Thus, the [State] must plead "enough facts [taken as true] to state a claim to relief that is plausible on its face," and plead "with particularity the circumstances constituting fraud or

---

[1] The State of Louisiana has the obligation as a participant in the Medicaid program to seek and recover not only the State's portion of monies contributed to the program, but also the monies at issue as part of the Federal share of the Medicaid program to which the United States has a claim. Therefore all monies at issue are subsumed by the State of Louisiana's claim.

[2] The State's Complaint concerns MAPIL rather than the federal False Claims Act; however, the sections of MAPIL establishing liability for the presentment of false claims are similar to the provisions of the False Claims Act and federal cases interpreting the False Claims Act can be helpful in the analysis of actions brought under MAPIL.

5

mistake," although knowledge and other conditions of a person's mind may be alleged generally.  *U.S. v. Bollinger Shipyards, Inc.*, 775 F.3d 255 (5th Cir. 2014).  To plead malice, intent, knowledge, and other conditions of a person's mind generally, the complaint must satisfy the general "short and plain statement of the claim" mandate required by Rule 8(a).  *Ashcroft*, 556 U.S. at 678.   Knowledge need not be pled with particularity under Rule 9(b), it need only be pled plausibly pursuant to Rule 8.  *Bollinger, supra* at 260.

Fraud may be pled on information and belief; however, where the allegations are based on information and belief, the complaint must set forth a factual basis for such belief.  *U.S. ex rel Willard v. Humana Health Plan of Texas Inc.,* 336 F.3d 375 (5th Cir. 2003).  While fraud complaints are traditionally required to include the time, place and contents of the false representation, as well as the identity of the person making the misrepresentation and what that person obtained thereby,  there is no single construction of rule 9(b) that applies in all contexts; and, depending on the claim, a plaintiff may sufficiently "state with particularity the circumstances constituting fraud or mistake" without including all the details of any single court-articulated standard.  *U.S. ex rel Grubbs v. Kanneganti*, 565 F.3d 180 (5th Cir. 2009). Procedural rules for pleading ought not be read to insist that a plaintiff plead the level of detail required to prevail at trial.  *Id.*

### *The State plausibly asserts a claim under MAPIL*

To state a claim under MAPIL, the State must plausibly plead the defendants violated each element of the provisions it places at issue in the complaint.  Here, the State's complaint alleges that the defendants violated four distinct provisions of MAPIL:  1) La. R.S. 46:438.3(A), related to the presentment of false or fraudulent claims; 2) La. R.S. 46:438.3(B), related to misrepresentations in a claim; 3) La. R.S. 46:438.3(C), MAPIL's "reverse false claims"

provision; and 4) La. R.S. 46:438.3(D), related to defrauding or attempting to defraud through misrepresentation. The State avers that the defendants violated these provisions through two schemes. Primarily, the State's complaint alleges the defendants violated MAPIL by billing for services it did not actually render through its practice of billing a single service multiple times, utilizing different provider NPI's to disguise that the claim for that single service had previously been submitted. (Cmpl at ¶'s 36 and 37). The State also alleges that the defendants knowingly submitted claims that were wholly undocumented and therefore ineligible for payment, and includes a number of claims that the government requested documentation for but did not receive as examples. (Cmpl at ¶ 44). As discussed further below, the State plausibly pleads each of its claims under MAPIL, with the required particularity to satisfy Rule 9(b).

### *The State plausibly pleads a violation of MAPIL section 438.3(A) and (B)*

To allege a claim under 438.3 section (A), the state must plausibly allege three things: that the defendants 1) presented or caused to be presented a claim; 2) that the claim was false or fraudulent; and 3) that the presentation of the false or fraudulent claim was done knowingly. Regarding the duplicate billing scheme, the defendants do not dispute that the State has sufficiently alleged that duplicate[3] claims were presented to the State's Medicaid program (MTD at page 9); rather, it takes issue with whether the State adequately pled that these false and fraudulent claims were knowingly submitted as required by MAPIL. In other words, Defendants complain about the lack of specificity related to how the complaint alleges knowledge. However, rule 9(b) does not require that state of mind, such as knowledge, be plead with particularity. Federal courts have held that knowledge need only be pled plausibly

---

[3] Duplicate claims in this context refers to the defendants' practice of billing a single service to a recipient multiple times. The actual claims presented to the Medicaid program are not true "duplicates" in that the defendants changed information on the claim so that the single service would be paid multiple times.

7

pursuant to Rule 8, with sufficient facts to allow the court to plausibly infer the requisite state of mind. *Bollinger, supra* at 260.

The State has more than met its burden by generally pleading knowledge. MAPIL defines "knowing" or "knowingly" as the person has actual knowledge of the information or acts in deliberate ignorance or reckless disregard of the truth or falsity of the information.[4] In support of its allegation that the defendants acted in a knowing manner, the State in its *Complaint* asserted that the defendants received remittance advices[5] that advised them of which claims had already been submitted, and that the duplicate claim was submitted after the original claim had already been paid. (Cmpl at ¶43).

While Defendants complain that the State failed to give details as to how the defendants obtained the remittance advice, this level of minutiae is not required at the pleading stage. In any case, for the purposes of a motion to dismiss, the court is required to accept the State's allegations as true, and can take into account Louisiana law that requires the State's Managed Care Organizations (MCO) to provide an "itemized accounting" of the individual services represented on the claim simultaneously with the payment of the claim and reasonably infer that the MCO abided by the laws it is required to follow.[6] *Lamar v. Micou, 114 U.S. 218; 5*

---

[4] La. R.S. 46:437.3(11).

[5] A remittance advice contains information about the claims processed during that payment cycle. Oftentimes a large number of claims are included on a single remittance advice. For instance, the two remittance advice excerpts attached as Exhibit 3 to the State's Complaint in Intervention, were merely one page out of two separate remittance advices. The first page of each set of remittance advices is specifically addressed to the applicable Cognitive Development Center.

[6] La. R.S. 46:460.71(A): "Any claim payment to a provider by a managed care organization or by a fiscal agent or intermediary of a [Medicaid] managed care organization shall be accompanied by an itemized accounting of the individual services represented on the claim that are included in the payment. The itemization shall include but shall not be limited to all of the following items: (1) The patient or enrollee's name; (2) The Medicaid health insurance claim number; (3) The date of each service; (4) The patient account number assigned by the provider; (5) The Current Procedural Terminology code for each procedure…including the amount allowed and any modifier units; (6) The amount due from the patient that includes but is not limited to co-payments and

*S.Ct. 857; 29 L.Ed. 94 (1885) (The law of any state of the Union, whether depending upon statutes or upon judicial opinions, is a matter of which the courts of the United States are bound to take judicial notice, without plea or proof).*

Moreover, the defendants' own documentation used to support the exemplar claims in ¶38 show that the claims submitted for that single service were false and fraudulent in a number of ways. Specifically, the defendants billed twice as many units as indicated on the progress notes and submitted the same service twice, with up-coded units both times. These facts allow the court to reasonably infer that the defendants either 1) had actual knowledge of the falsity of those claims when they submitted them, or 2) that the defendants at the least acted with reckless disregard or deliberate ignorance when they submitted the duplicate claims to the Medicaid program because the defendants' own documentation does not support the claim it submitted for that service.

Defendants cite to *Hefner v. Hackensack University Medical Center, 495 f.3d 103 (3rd Cir. 2007),* support their proposition that the State must be more specific in how it alleges a "knowing" violation. (MTD at 10). However, *Hefner* has no bearing on the pleading standards required to survive a 12(b)(6) motion to dismiss. The *Hefner* matter was decided on a Motion for Summary Judgement, after both sides had a chance to conduct discovery. At the current juncture in this matter, no discovery has taken place. Contrary to Defendants' proposition that the State must be more specific in how it alleges scienter, binding precedent from both the U.S. Supreme Court and the Fifth Circuit state otherwise; as *Ashcroft* and *Bollinger* both state that knowledge need only be pled plausibly under Rule 8 standards. The State has more than met its burden in this regard.

---

coinsurance or deductibles; (7) The payment amount of reimbursement; and (8) Identification of the plan on whose behalf the payment is made."

9

Even if this court believes that the State will need to eventually specify the person(s) within the defendants' employ who pressed the buttons to submit the false claims to the Medicaid program, such a requirement is not required until later in the litigation. To hold the State to that level of detail prior to engaging in discovery would be inappropriate at the pleading stage. Any dismissal on this ground would be premature at this point.

For similar reasons, the State's *Complaint* also plausibly alleges a claim under La. R.S. 46:438.3(B). Under subsection (B), the State must plausibly allege that: 1) the defendants made a knowing misrepresentation material to a false or fraudulent claim: or 2) the defendants knowingly made or used a false record or statement material to a false or fraudulent claim. The State's *Complaint* includes facts that show Defendants misrepresented the quantity of services provided, and that the defendants submitted false information on its claims submission by changing the NPI from the previously submitted claim to one for an entity that did not actually perform the service. In its *Complaint*, the State included documentation in the form of progress notes for the services and remittance advices for the exemplar claims that support its allegations, including specific information as to how the defendants had knowledge that the claims it submitted were false and fraudulent. On top of that, the State then included a listing of **over 6,000 claims** that even the defendants do not dispute sufficiently allege duplicate billings. The *Complaint* further states that these misrepresentations were material to the Medicaid program's decision to pay the claims. Because of this, the State has sufficiently stated its claim under 438(B), and any assertion otherwise is without merit. The defendants' motion to dismiss this claim should be denied.

*The State plausibly pleads a claim under MAPIL 438.3(C)*

Section 438.3(C) of MAPIL requires that the State show that a person knowingly made, used, or caused to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the [Medicaid] program, or that person knowingly concealed, avoided, or decreased an obligation to pay or transmit money or property to the Medicaid program, and the State's *Complaint* contains sufficient allegations to allow a plausible inference that the State is entitled to relief under this subsection. The *Complaint* states that one of the MCO's notified the defendants of the duplicate billing issue and recouped a large sum of money based on the duplicate billing issue, and alleges, through the inclusion of an email from management staff, that the defendants were aware of the duplicate billing issue. At that point, the defendants had an obligation to review its billing to all MCO's to ensure its billings were accurate and reverse or repay any claims they were not entitled to payment for. By not engaging in this process, the defendants at the least knowingly avoided an obligation to return monies to the Medicaid program. While Defendants complain that the State did not identify the particular persons within the defendants' operations responsible for this task, as mentioned above, the State is not required to do so at this point in the litigation.

*The State plausibly pleads a claim under MAPIL 438.3(D)*

Defendants give scant attention to the State's claim under 438.3(D), merely asserting that, "the State fails to allege who attempted to defraud the State," and thus this claim is insufficient. (MTD, page 14). This contention is without merit. In its *Complaint*, the State clearly alleges who attempted to defraud the State – Seaside's subsidiary Cognitive Development Center companies. The State is not required to identify specific personnel within those entities responsible for claims submissions, and in any case, that type of information is uniquely within

11

the auspices of the defendants and not readily available to the State without going through discovery. As mentioned previously, and will be explained further below, the State has included sufficient detail within the *Complaint* to apprise the defendants of the claims against them so that they may prepare an adequate defense to the State's allegations.

*The State's Complaint satisfies the requirements of Rule 9(b)*

The purpose of Rule 9(b) is to ensure the complaint "provides defendants with fair notice of the plaintiffs' claims, protects defendants from harm to their reputation and goodwill, reduces the number of strike suits, and prevents plaintiffs from filing baseless claims then attempting to discover unknown wrongs." *Grubbs* at 190. Confronting False Claims Act defendants with both an alleged scheme to submit false claims and details leading to a strong inference that those claims were submitted – such as dates and descriptions of recorded, but un-provided services and a description of the billing system that the records were likely entered into – gives defendants sufficient information to be placed on notice of the claims against them so that they may adequately prepare a defense to those claims. *Id.* This pleading standard is not intended to require plaintiffs to plead the level of evidence that would be required at trial; rather the complaint may survive a 9(b) challenge by alleging particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted. *Id.* In this matter, as elucidated below, the State has met its burden under 9(b) by pleading the who, what, when, where, and how of the fraud:

Who:  Seaside subsidiary Cognitive Development Center entities;

What:  Submission of a large number of claims over an extended time frame that were not provided as indicated on the claim submissions, with the State specifically listing each claim it chose to place at issue for this matter;

When:  An over-arching time frame of as early as May, 2012, and as late as January, 2019, for the fraudulent schemes complained of. For the specific claims at issue on Exhibit 5, a time frame of December, 2015, through February, 2016;

12

>    Where:  In Louisiana for certain behavioral health services afforded to beneficiaries of the Louisiana Medicaid program; and
>
>    How:   Through the submission of "duplicate" claims for services using multiple billing NPI numbers to disguise that the claim had previously been paid and/or by submitting claims for services that were wholly undocumented.

Not only did the State provide adequate facts concerning the fraud to comport with a Rule 9(b) challenge, it also went above merely relying on a "strong inference" that the claims were submitted and provided information regarding **each specific claim** at issue in this matter, and then went into exacting detail on exemplar claims from that data set to illustrate how the claims were false and fraudulent. This discussion begins at ¶38 and provides the following for the exemplar claims: 1) the Medicaid ICN specifically identifying the claims in the LMMIS[7]; 2) the date the claims were submitted; 3) the date, type of service, and number of units for that service purportedly provided to the Medicaid beneficiary; 4) the date the claims were paid and the amount paid; 5) the billing names and NPIs of the entities submitting the claims.

At ¶39, the *Complaint* further discusses that the medical records the defendants provided to support these claims, included as exhibit 2 to the *Complaint*, show how the claims were false or fraudulent. Per ¶39 and exhibit 2, there are two identical progress notes, except for a "note ID number", indicating that only 4 units of service were provided by the defendants on the date and time of service. Despite the progress notes clearly indicating the defendants only provided 4 units of the service, they billed and were paid for 16 units. This resulted in a Medicaid overpayment of 12 units for that single service.

At ¶43 the *Complaint* also explains how the defendants had further knowledge that their submission for these claims was false or fraudulent. It alleges how the defendants submitted

---

[7] LMMIS refers to the Louisiana Medicaid Management Information System. The LMMIS contains the claims and encounter data pertinent to services provided through the Louisiana Medicaid program.

13

the duplicate claim after receiving information that the first claim had been paid through the provider remittance advice, and provided the remittance advices for these two claims as Exhibit 3. A review of the remittance advice supports the State's allegations in that it shows that the first claim, which was false and fraudulent in and of itself, was submitted and paid **before** the defendants submitted the duplicate claim.

Despite these details, Defendants complain in their motion to dismiss that it is inexcusable that the State did not include more detail in its *Complaint* after having investigated the matter for over three years, that the State pleaded some allegations "upon information and belief," and that the *Complaint* does not identify individuals within the defendants employ responsible for coming up with the scheme or submitting the claims. *(MTD at page 5)*. At the outset, the State is unaware of any federal rule of pleading, and the defendants cite no authority, for their apparent proposition that the pleading standards for government plaintiffs are contingent on or otherwise dictated by how long the government investigated a matter. To the contrary, and like every other litigant that comes before this Court, the State is governed by the pleading standards set forth in Rule 8 and Rule 9(b). A helpful case to illustrate the detail a complaint needs to satisfy Rule 9(b) is *U.S. ex rel Grubbs v. Kanneganti*. In that matter, the Fifth Circuit states:

> "And surely a procedural rule ought not be read to insist that a plaintiff plead the level of detail required to prevail at trial. The False Claims Act is a civil provision and under section (a)(1)[8] a plaintiff must prove presentment by a preponderance of the evidence. Fraudulent presentment requires proof only of a claim's falsity, not of its exact contents. If at trial a qui tam plaintiff proves the existence of a billing scheme and offers particular and reliable indicia that false bills were actually submitted as a result of the scheme – such as dates that services were fraudulently provided or recorded, by whom, and evidence of the department's standard billing procedure - a reasonable jury could infer that more likely than not the defendant presented a false bill to the government, this

---

[8] Section (a)(1) of the federal False Claims Act is the analogous provision to MAPIL section 438.3(A). See 31 U.S.C. §3729(a)(1).

> despite no evidence of the particular contents of the misrepresentation. …Nevertheless, a plaintiff does not necessarily need the exact dollar amounts, billing numbers, or dates to prove to a preponderance that fraudulent bills were actually submitted.  **To require these details at pleading is one small step shy of requiring production of actual documentation with the complaint, a level of proof not demanded to win at trial and significantly more than any federal pleading rule contemplates."** (*emphasis added*).  *Grubbs* at 189, 190.

Essentially, what the defendants are asserting should be pled in the complaint is information that, at best, may be necessary for trial, but is significantly more than the pleading standards require.

Additionally, the defendants fault the State for its use of the phrases "upon information and belief" and "appears" in its *Complaint*, complaining that the State did not assert that it definitively identified duplicate billings that were not repaid or recouped. (MTD, page 5). There is no prohibition on pleading fraud matters "upon information and belief," and such a pleading comports with the Rule 9(b) requirements as long as the complaint sets forth a factual basis for such belief.  As explained above, the State has met that standard in that it included: 1) over 6,000 claim lines that even the defendants agree sufficiently allege duplicate claims for a single service rendered to Medicaid recipients billed by two different billing entities; 2) medical documentation that supports the allegation that defendants submitted claims for services they did not render; 3) excerpts from the remittance advices the MCOs are required to send to providers when they pay a claim, showing that Defendants had knowledge that the previously submitted claim had been paid; and 4) gave a detailed analysis on exemplar claims to illustrate how the claims were false and fraudulent.

Even if the above was not sufficient, which the State contends it is, the mere fact that the defendants submitted multiple claims for a single service, and changed or modified one component of the submission so that the claims would be paid, is sufficient to show that the

defendants knowingly submitted false or fraudulent claims, because only one of the submitted claims could possibly be true. Not only has the State met the Rule 9(b) standard, it has gone above and beyond what it was required to do by supplying this information as the defendants have been informed of exactly which claims are at issue in this matter.

Defendants also attempt to place a wholly fabricated burden of proof on the State by asserting that the State has not "**definitively** identified the duplicate billings that were not repaid or recouped." *(Def. MTD at page 5).* Put bluntly, there is no such thing as a "definitive" burden of proof at any point in any litigation, much less at the pleading stages in a civil matter. Rather, the burden of proof is by a preponderance of the evidence, and per MAPIL, the burden is actually on the defendant to prove that it provided the quantity of services provided the defendants claimed in its submissions to the Medicaid program.[9]

Finally, it should be noted that the issue of recoupment is a red herring wholly irrelevant to a determination of whether the defendant violated MAPIL. *Grubbs* is also instructive in this regard, stating:

> "The False Claims Act, in contrast, lacks the elements of reliance and damages…A person that presented fraudulent claims that were never paid remains liable for the Act's civil penalty. It is adequate to allege that a false claim was knowingly presented regardless of its exact amount; the contents of the bill are less significant because a complaint need not allege the Government relied on or was damaged by the false claim." *Grubbs* at 189.

In essence, what the Fifth Circuit is saying here is that damages are not relevant in determining whether a violation of the False Claims Act has occurred.[10] Even if a claim was

---

[9] See La. R.S. 46:438.8(A): The burden of proof in an action instituted pursuant to [MAPIL] shall be…by a preponderance of the evidence…the defendant shall carry the burden of proving that goods, services, or supplies were actually provided to an eligible recipient in the quantity and quality submitted on a claim.

[10] MAPIL differs here from the federal False Claims Act in that it requires the State to allege damages of at least $1,000 to bring an action for false and fraudulent claims under section 438.3. This restriction is a merely a limit on when the government may bring a cause of action under MAPIL, and not whether a violation of section 438.3 was committed. The 5th Circuit's analysis here is just as valid to MAPIL as it is the Federal False Claims Act.

16

never paid, or paid but previously recouped, the State would still be entitled to a civil fine of not more than treble damages and a civil monetary penalty of not less than $5,500 and not more than $11,000 for each violation.[11]  Recoupment only comes into question in determining the amount of credit the defendants may be entitled to for an award of actual damages.

The State is similarly puzzled by the defendants' complaint that while the State alleged a longer period spanning multiple years, it only specifically included in its complaint claims "from late December 2015 through February 2016." *(MTD at page 9).*  It is a well-known axiom of law that the plaintiff is the master of his complaint and can choose what claims he wants to bring.  For the purposes of this matter, the State chose to concentrate on only those claims that were not previously discovered and recouped by the MCOs, but included information about the prior actions taken against the defendants to assist in establishing the overarching scheme and scienter. Nothing prevented the State from placing every single claim for the entire period, recouped and un-recouped, at issue in this matter and seeking actual damages, civil fines, and civil monetary penalties as allowed by MAPIL for each one of those claims, with appropriate credits given for any actual damages already paid by the defendants.  That the State did not do so is a great accommodation to the defendants.  It appears that the defendants' position is that the State cannot maintain its action unless it brings a claim for all the claims that were part of the scheme.  The State is unaware of such a requirement, but if the court agrees with the defendants on this point then the State would request an opportunity to

---

[11] Recoveries allowed under MAPIL are provided for in La. R.S. 46:438.6, which allows a recovery for actual damages incurred as a result of the violation of MAPIL, a civil fine that shall not exceed three times the amount of actual damages, and mandatory civil monetary penalties of not less than $5,500 and not more than $11,000 for each false claim and payment of interest on the amount of the civil fine imposed pursuant to MAPIL at the maximum rate of legal interest provided by R.S. 13:4202 from the date the damage occurred to the date of repayment.

amend its complaint to include all the claim submissions that could possibly be at issue in this matter.

**Conclusion**

As demonstrated above, the State with regards to each of its claims pleads the allegations with sufficient plausibility and particularity to satisfy the requirements of Rule 8 and 9(b). To the extent this court disagrees with the State, the State requests that the Court afford the State an opportunity to amend its *Complaint*.

                                     Respectfully Submitted:

                                     Jeff Landry
                                     Attorney General

                                     /s/Nicholas J. Diez
                                     Nicholas J. Diez, La. Bar 31701
                                     Assistant Attorneys General
                                     Louisiana Department of Justice
                                     1885 N. Third St.
                                     Baton Rouge, LA 70802
                                     Tel:   (225) 326-6210
                                     Fax:   (225) 326-6295
                                     Email: diezn@ag.louisiana.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on May 31, 2022, the foregoing document was electronically filed with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel of record.

                                     /s/Nicholas J. Diez
                                     **Nicholas J. Diez**